LAWRENCE WATTS v. STATE OF MISSISSIPPI.

[44 South., 36.]

CRIMINAL LAW AND PROCEDURE.  *Continuance.  Absence of witness.*

Where in a prosecution for murder the position of the body of
the deceased when shot was material as determining the guilt
or innocence of the accused, and there was no lack of diligence
on his part to procure the attendance of the witness, the case
should have been postponed on his application so as to secure
the testimony of the person who was first upon the scene after
the shooting and who placed the deceased in a bed before any
one else arrived.

FROM the circuit court of Pontotoc county.

HON. EUGENE O. SYKES, Judge.

Watts, appellant, was indicted and tried for murder, con-
victed of manslaughter and appealed to the supreme court.

The case turned upon a question of a continuance, the facts
in respect to which are stated in the opinion·of the court.

*Knox & Donaldson,* for appellant.

The application of appellant for a continuance because of the
absence of Brassfield, should have been granted by the lower
court.   The application stated that this witness had been duly
subpoenaed, and had answered every call of witnesses in the case
except just immediately before the trial; and that appellant
expected to prove that he was the first person to appear on the
scene after the killing, and who moved deceased before the
inquest, placing deceased upon the bed before anyone else was
present; and that appellant expected to prove by Brassfield that
he saw deceased the day before the killing, running, with a
pistol in his hand, after the appellant's father, and that Brass-
field heard the deceased say, "I am going to kill both you
and Lawrence Watts.

In *Long* v. *State,* 52 Miss., 23, this court said: "It is a dangerous exercise of judicial discretion to refuse a continuance and a postponement of the trial to a further day of the term, when the affidavit alleges material facts, where all diligence has been shown, and where it is averred that the same proof can be made by no other than the absent witness." Nor is the error in not allowing a continuance or passing the case, cured by permitting the defendant to read his affidavit for continuance in evidence. *Scott* v. *State,* 80 Miss., 197, s.c., 31 South., 710; *Montgomery* v. *State,* 85 Miss., 330, s.c., 37 South., 825; *Caldwell* v. *State,* 27 South. Rep., 816; *Whit* v. *State,* 85 Miss., 208, s.c., 37 South. Rep., 809; *Watson* v. *State,* 81 Miss., 700, s.c., 33 South., 491.

It is said in *Lamar* v. *State,* 63 Miss., 265, that a defendant cannot secure a reversal of his case if he fails to renew his application at the trial, and does not complain thereof in his motion for a new trial. We call the court's attention to the fact that appellant's motion was seasonably renewed at the trial, and the action of the court in not granting the continuance, was alleged as a motion for a new trial. There was no lack of reasonable diligence on the part of appellant to procure the attendance of the witness. The district attorney, himself, admitted that the evidence of Brassfield, if it should be as stated in the application for continuance, was material.

Certainly the circuit court should not throttle justice and strangle fair play by forcing the defendant, who has shown due diligence in getting ready for trial, to go into the trial entirely without witnesses. Yet if every witness subpœnaed by appellant, had been absent, and application for continuance been made for such reason, it must be presumed, judging by the action of the court as to Brassfield, that the appellant would have been forced into trial anyhow. The discretion which a trial court exercises in matters of continuance, must be judicial, not arbitrary; it is the guardian of the rights of the accused, as well as of those of the people at large. 9 Cyc., 167; *Hattox*

v. *State,* 80 Miss., 186, s.c., 31 South., 579; *Havens* v. *State,* 75 Miss., 488, s.c., 23 South., 181; *Scott* v. *State,* 80 Miss., 527, s.c., 31 South., 710; *Hill* v. *State,* 72 Miss., 197, s.c., 17 South., 375.

*George Butler,* Assistant Attorney-General, for appellee.

While the record shows that an attachment for the witness, Brassfield, was asked for, it nowhere shows that return was made thereon, nor is it shown that any further effort was made to have the witness present, either during the trial before the jury, or on the subsequent motion for a new trial; nor was appellant's affidavit for continuance because of the absence of Brassfield, submitted and read before the jury, nor any reason given why this was not done.

The appellant's application for continuance failed to set forth what was expected to be proved by the witness, Brassfield, with reference to the removal of the body; the application merely stating that there would be proof by the witness of the bare fact that he had moved the body of the deceased. It does not show that the witness was a freeholder or resident within the jurisdiction of the court; nor why the witness failed to appear in response to the attachment. We must presume that the court acted properly in overruling the application for continance. *Wells* v. *State* (Miss.), 18 South. Rep., 117.

The application does not meet the requirements of the rule announced in *Lamar* v. *State,* 63 Miss., 265. It is not in every case even where the desired testimony is material, and, in all probability, true, that this court will reverse the judgment of the trial court upon the grounds of its refusal to grant a continuance because of the want of such testimony. It is only in case the evidence adduced at the trial would impress this court with the conviction not merely that the defendant might have, in all probability, been prejudiced in his rights by the denial of such continuance, but that it was reasonably probable that

if the absent witness had been present, and testified before the jury, a different result would have been reached by them. *State* v. *Cochran,* 147 Mo., 504–516, S. W. Rep., 558.

Even if the witness, Brassfield, appeared in person, and testified before the jury, it would, in all probablity, not have changed the result at the trial. *Hemingway* v. *State,* 68 Miss., 361, s.c., 8 South., 317.

Argued orally by *R. H. Knox,* for appellant, and by *George Butler,* Assistant Attorney-General, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

We think there should have been a continuance, or at least a postponement, of this case until the witness Brassfield could have been procured. The defendant in his application stated that he expected to prove by Brassfield that he was the one who moved the deceased before the inquest was held, and placed him in the bed before any one else arrived at said scene. Looking to the whole record as to the diligence of defendant in trying to procure Brassfield's attendance, we think it cannot fairly be said that there was any lack of reasonable diligence on the part of the defendant in this respect., The theory of the state, as frankly stated at the bar, is that this was a cold-blooded assassination, and the reliance of the state, for support of this theory, is upon the physical facts, location of the body, and the location of the blood on the bed and on the wall. If the testimony of the defendant is to be believed, it was a clear case of self-defense. It is not denied that the deceased was armed with a pistol. One witness states that he found the pistol lying at his right side in the bed and that the brains and blood were scattered all over the head of the bed, and on the ceiling and on one of the walls. He says the deceased's right hand was right where the pistol was, and he expressly states that the blood and brains on the wall were about four and one-half feet up from the floor. This is most significant in the

case. It is extremely difficult to understand how this blood could have been that high upon the side of the wall if the deceased had been shot whilst he was lying asleep in bed.

Defendant states that the deceased shot at him with a pistol, and that the ball entered near the fireplace. There seems to have been a shot in the fireplace made by a bullet. One of the witnesses states that the place in the fireplace, where the bullet was supposed to have struck, looked like a fresh place; that it was not black right in the hole. He says the pistol was loaded all around when he saw it, but that there was one empty shell in the bed. When it is considered, in view of all this uncertainty as to the position the deceased was in when shot, especially when regard is had to the indisputable fact that the blood and brains were four and one-half feet up from the floor on the side of the wall, and when regard is had to the further fact that according to the application for the continuance Brassfield was the first man in the room, and that he is said to have placed the body on the bed, it certainly becomes clear that it was vital to the defendant's cause, and to a fair trial in the case, that Brassfield should have been secured and his testimony heard.

*For the error of the court in refusing either to continue or postpone the case so as to secure this very vital testimony, the judgment is reversed, and the cause remanded for a new trial.*